JUSTICE LEAPHART
specially concurring.
I concur in the result. However, I think the Court has needlessly relied upon both subrogation and insurance contract analyses. Despite the document’s protestations to the contrary, the settlement agreement between Nimmick and Employers Mutual did include Sobieck. Sobieck was a signatory to the settlement and Nimmick gave Sobieck a covenant not to execute against her assets or those of her family. As the Court correctly points out, because the settlement was on behalf of Sobieck, she is no longer an uninsured motorist under the terms of Nimmick’s State Farm policy. The Court does not need to further analyze the case in terms of subrogation theory because a right of subrogation does not even arise unless there is coverage under the policy resulting in payment by the insurer. Here, although Sobieck initially fit the definition of an uninsured motorist under the terms of the policy, the subsequent settlement changed her status.
Since the Court does engage in subrogation analysis, I must observe that, strictly in the context of subrogation law, I would reverse and remand for a determination as to whether or not Sobieck had any assets with which to respond to State Farm’s potential subrogation claim. In other words, I would adopt a “no prejudice” rule whereby a settlement with a tortfeasor would not release an insurer *325 such as State Farm if the plaintiff could show that the tortfeasor was judgment proof and, thus, there was no prejudice to the insurer. However, in the context of an uninsured motorist’s policy, if the insured (Nimmick) entered into an insurance settlement with the tortfeasor (Sobieck), regardless of the amount, Sobieck is no longer “uninsured” under the State Farm policy and there is no insurance coverage. In the absence of coverage and payment by State Farm, the right of subrogation does not come into play. Thus, the question of whether State Farm has, in fact, been prejudiced is not an issue.